**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| **WILLIAM PAGE,** | ) |  |
|  | ) |  |
| **Petitioner,** | ) | **05 Civ. 3985 (KMK) (LMS)** |
|  | ) |  |
| *- against -* | ) |  |
|  | ) | **REPORT AND** |
| **GARY GREENE, Superintendent,** | ) | **RECOMMENDATION** |
| **Eastern Correctional Facility** | ) |  |
|  | ) |  |
| **Respondent**. | ) |  |

_____

**TO:  THE HONORABLE KENNETH M. KARAS,**
**UNITED STATES DISTRICT JUDGE**

Pro se petitioner, William Page ("Petitioner"), files this petition for a Writ of Habeas

Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction pertaining to

indictment 28 of 1996 for one count of burglary in the first degree, two counts of sodomy in the

first degree, one count of attempted rape in the first degree, one count of sexual abuse in the first

degree, one count of burglary in the second degree, one count of robbery in the third degree, once

count of petit larceny, and one count of attempted burglary in the second degree.  S: 8.[1]

Petitioner also challenges his conviction pertaining to indictment 135 of 1996 for one count of

burglary in the first degree, one count of sodomy in the first degree, one count of attempted

sodomy in the first degree, one count of sexual abuse in the first degree, one count of robbery in

the third degree, and one count of grand larceny in the fourth degree.  S: 8.  Lastly, Petitioner

challenges his conviction pertaining to indictment 238 of 1996 for one count of burglary in the

---

[1]Hereinafter, "S" refers to the transcript of the Sentencing Minutes.

first degree, one count of rape in the first degree, one count of sexual abuse in the first degree, three counts of petit larceny, two counts of burglary in the second degree, and one count of criminal possession of stolen property in the fifth degree.  S: 8-9.  On December 5, 1996, Petitioner was sentenced to an aggregate term of 63 ½ to 127 years on all counts of conviction.  S: 60-71.  Petitioner is currently incarcerated at Clinton Correctional Facility in Dannemora, New York.

Petitioner seeks habeas relief on four grounds: (1) that the trial court's decision to consolidate certain counts of the three indictments for trial violated his due process rights; (2) that his right to be free from unreasonable searches and seizures was violated; (3) that his right to counsel during an approximate forty-hour interrogation was denied; and (4) that he was denied effective assistance of both trial and appellate counsel.  Respondent argues that the instant Petition should be denied in its entirety because Petitioner's due process claims are either procedurally barred or are without merit, and because Petitioner failed to establish that he was denied effective assistance of trial or appellate counsel.  For the reasons set forth below, I conclude, and I respectfully recommend that Your Honor should conclude, that this Petition for a Writ of Habeas Corpus should be denied.

## I.    **BACKGROUND**

### A.    **The Crimes**

This case involves a series of burglaries and sexual assaults committed over a nine month period in 1995 in Middletown, New York.  Resp't Aff. in Opp. 2.  Beginning on February 19, 1995, Petitioner broke into Isabelle Bagley's ("Ms. Bagley") house, grabbed Ms. Bagley from

behind and demanded money.  CE: 29-31.[2]  Petitioner then threw Ms. Bagley on the bed (CE:31),

took her clothes off (CE: 34-35), and attempted to anally sodomize her.  CE: 31, 34-36.  When

Petitioner's attempts to rape Ms. Bagley failed, Petitioner took a bag containing approximately

$1000 from Ms. Bagley and fled.  CE: 40, 48.

On March 7, 1995, Petitioner broke into Martha Dassori's ("Mrs. Dassori") home in

Middletown, New York.  T2[3], Volume 4: 663.  Petitioner forced Mrs. Dassori into her bedroom

and demanded that she remove her clothes.  T2, Volume 4: 668.  Petitioner threw Mrs. Dassori

onto her bed on her stomach and attempted to anally sodomize her.  T2, Volume 4: 668-69.

Unable to successfully anally sodomize her,  Petitioner attempted to rape Mrs. Dassori but was

interrupted by the telephone ringing.  T2, Volume 4: 669-70.  Petitioner then sodomized Mrs.

Dassori's vagina with his mouth.  T2, Volume 4: 671.  Finally, Petitioner demanded money, but

did not take any.  T2, Volume 4: 673. Petitioner then fled.  T2, Volume 4: 675.

On March 30, 1995, Petitioner broke into Mildred Mabee's ("Mrs. Mabee") home and

demanded money.  T1[4], Volume 1: 47.  Mrs. Mabee pressed the medical alert pendant she wore

around her neck, which made a loud noise which caused Petitioner to flee the scene.  T1, Volume

1: 47-48.

On April 3, 1995, Petitioner broke into Florence Marcellus' ("Mrs. Marcellus") home,

burglarized, and sexually assaulted her.  T2, Volume 6: 937, 943, 946.  Later, on May 10, 1995,

---

[2]Hereinafter, "CE" refers to the transcript of the Conditional Examination of Ms. Isabelle C. Bagley, held on 1/2/96.

[3]Hereinafter, "T2" refers to the transcript of the second trial.

[4]Hereinafter, "T1" refers to the transcript of the first trial.

Petitioner again broke into Mrs. Marcellus' home, burglarized and raped Mrs. Marcellus. T2, Volume 6: 954, 958.

On May 9, 1995, Mary Carpenter was at home watching television when she heard a noise at the dining room window. T1, Volume 4: 276. Mrs. Carpenter's dog began barking, causing Mrs. Carpenter's husband and daughter to come downstairs and they all ran outside of the house. T1, Volume 4: 277. Mrs. Carpenter noticed that the gate to the house was open, but did not see anyone at the house that night. Id. Mr. Carpenter noticed that a picnic table bench was overturned on the porch and that the dining room window was open. T1, Volume 4: 283.

At some other point on May 9, 1995, Petitioner broke into Lisa Henderson ("Ms. Henderson") and Nicholas Sibley's ("Mr. Sibley") home in Middletown. T1, Volume 4: 228. Petitioner came into Ms. Henderson and Mr. Sibley's bedroom, at which time, Ms. Henderson and Mr. Sibley started screaming. T1, Volume 4: 229. Petitioner ran out of the bedroom and closed the door behind him. Id.

Sometime in the late evening of November 1, 1995, or the early morning of November 2, 1995, Petitioner broke into James Dillon's ("Mr. Dillon") home and stole Mr. Dillon's VCR, two jewelry boxes, and Mr. Dillon's car. T1, Volume 4: 301-03.

### B. Pre-Trial Proceedings

#### 1. Investigation and Arrest

Petitioner voluntarily came to the Middletown Police Department in the early morning of November 5, 1995, for questioning about a stolen registration sticker. H2[5]:16. The police

---

[5]Hereinafter, "H2" refers to the transcript of the second pre-trial hearing held on May 30, 1996 before Judge Pano Patsalos.

believed that Petitioner's car had been used in connection with a burglary and sexual assault. Detective Gillespie questioned the Petitioner for several hours about the use and possession of his vehicle. H2: 18. However, Detective Gillespie did not question Petitioner about the burglary and sexual assault. Id. Around 1:00 p.m. on November 5, 1995, Petitioner was charged with criminal possession of stolen property in the fifth degree for having a stolen registration sticker affixed to his vehicle. H2: 16. Petitioner was put into a cell around 4:00 p.m. on November 5, 1995, and Petitioner slept until approximately 8:30 a.m. on November 6, 1995. H2: 82. Detective Gillespie came to Petitioner's cell around 8:30 a.m. on November 6, 1995, and brought Petitioner to an interview room. H2: 84. Detective Gillespie read Petitioner his Miranda rights. Id. Detective Gillespie told Petitioner that his car had been seen fleeing a burglary and asked whether the police could search Petitioner's home for a shirt seen on a suspect involved in the burglary and sexual assault. H2: 7. According to Officer Gillespie, Petitioner consented to the search. H2: 9. Petitioner contends that he did not consent to allow the officers to search his home. H2: 90. Petitioner testified that Detective Gillespie told him that he would only be released if he consented to the search of his home. H2: 97.

At approximately 11:35 a.m. that day, Detective Gillespie, Detective Mishk, Detective Kummer, Petitioner, and Petitioner's then probation officer, James Orris, went to Petitioner's house. H2:10. Petitioner had been released on his own recognizance on the criminal possession charge and was not handcuffed or restrained in any way while at his home. H2: 21, 35. The officers searched Petitioner's house and Detective Mishk found a stolen VCR in Petitioner's bedroom. H2: 24. Detective Mishk had previously worked on the Dillon burglary and had the serial number of the stolen VCR with him at Petitioner's house and verified that the VCR in

5

Petitioner's bedroom was the same one that Mr. Dillon had reported stolen. H2: 31-32, 39. Detective Mishk took the VCR with him when he left the home. H2: 24. Petitioner remained at his home and was not placed under arrest for the stolen VCR. H2: 14.

Approximately one month later, shortly after 9:30 a.m. on December 5, 1995, Detective Gillespie and Petitioner's then-probation officer, James Orris, went to Petitioner's house in Middletown, New York and asked Petitioner if he would come to the police station with them to discuss a "police matter" and Petitioner agreed. T2, Volume 3: 444, 446. Once at the police station, Petitioner, Detective Gillespie, and Detective Mishk went into an interview room. T2, Volume 3: 446. At this point, Detective Gillespie again read Petitioner his Miranda rights. T2, Volume 3: 447. Petitioner signed the waiver of rights form and the detectives began interviewing him. T2, Volume 3: 450-51. Soon thereafter, the detectives and Petitioner went to another interview room in the police station. T2, Volume 3: 452. While in the second interview room, Petitioner was offered food but refused. Id. Shortly after noon, the detectives returned Petitioner to the original interview room that now contained various pieces of evidence relating to the burglary and sexual assault cases for which Petitioner was eventually charged. T2, Volume 3: 453. Among the items was a folder with a picture of a shoe that had a distinct sole pattern. Id. This pattern had been found at the scene of one of the subject burglaries. Id. Petitioner admitted that he had sneakers similar to the ones in the photograph. T2, Volume 3: 454. Detective Gillespie told Petitioner that they had found his fingerprints in two homes in Middletown that had been burglarized. T2, Volume 3: 457-58. Around 2:30 p.m., Petitioner placed a lunch order which was provided. T2, Volume 3: 458.

At approximately 11:15 p.m. on December 5, 1995, Detective Gillespie placed Petitioner

under arrest.  T2, Volume 3: 459.  In connection with processing Petitioner, his fingerprints were taken.  Id.

### 2. *Indictments*

On January 18, 1996, Petitioner was indicted in Orange County, indictment number 96-028, for burglary in the first degree, two counts of sodomy in the first degree, attempted rape in the first degree, two counts of sexual abuse in the first degree, burglary in the second degree, robbery in the third degree, petit larceny, and attempted burglary in the second degree.  Resp't Aff. In Opp. 2, Resp't Ex. 1.

On March 14, 1996, through indictment number 96-135, Petitioner was charged with burglary in the first degree, sodomy in the first degree, attempted sodomy in the first degree, sexual abuse in the first degree, robbery in the third degree, and grand larceny in the fourth degree.  Resp't Ex. 2.

On May 14, 1996, through indictment number 96-238, Petitioner was charged with burglary in the first degree, rape in the first degree, sexual abuse in the first degree, four counts of petit larceny, three counts of burglary in the second degree, and criminal possession of stolen property in the fifth degree.  Resp't Ex. 3.

### 3. *Motions*

On March 13, 1996, Petitioner's then-attorney filed a motion to sever indictment 96-028 and to grant the Petitioner three separate trials for the three separate incidents alleged in the indictment.  Resp't Ex. 4.  Petitioner's attorney argued that there were substantial differences in the amount of proof for the different incidents and a jury would not be able to consider the evidence separately.  Id.  Not only did the People oppose Petitioner's motion to sever, but they

filed a motion to consolidate indictment 96-028 with indictment 96-135.  The prosecution argued that the offenses contained within the two indictments demonstrated the same modus operandi such that evidence of Petitioner's commission of one burglary was probative of his commission of the other burglaries and also served to establish Petitioner's identity.  Resp't Ex. 5.  Therefore, joinder of the two indictments for purposes of trial was proper.  Furthermore, the prosecution argued that incidents contained within indictment 96-028 should not be severed, because the evidence for each incident was similar, as Petitioner's fingerprints were found at each of the three crime scenes.  Resp't Ex. 5.  Judge Patsalos held a hearing on the issue of severance and consolidation on May 30, 1996, and June 3, 1996. Ultimately, Judge Patsalos ordered that due to the nature of the incidents, some involving pure burglary and others involving burglary and sexual assaults, counts 7, 8, 9, and 10 of indictment 96-028 were to be joined with counts 7, 8, 9, 10, and 11 of indictment 96-238.  Resp't Ex. 15.  This consolidated the pure burglaries in one indictment and the burglaries with sexual assaults in a separate indictment.

### C.    The Trials

Petitioner's first trial began on July 16, 1996.  This trial was for indictment number 96-028, counts one through nine, involving the burglaries at the Mabee, Henderson, Carpenter, and Dillon homes.  T1, Volume 1: 19-23.  During this trial, the prosecution called each victim to testify.  T1, Volume 1: 43.  All of the victims testified that they did not know Petitioner, and they had never given Petitioner permission to be in their homes.  T1, Volume 1 & 2: 44-45, 226, 273-74, 280-81, 297.  The prosecution also put forth numerous police officers, as well as two fingerprint analysts to testify as to the presence of Petitioner's fingerprints at the four crime scenes.  T1, Volume 1 & 5: 82, 469, 470, 542, 478, 546.  Detective Mishk also testified to

8

finding Mr. Dillon's VCR in Petitioner's bedroom. T1, Volume 2: 250. Petitioner's then-counsel cross-examined the prosecution's witnesses and objected to the admission of certain evidence as well as to certain testimony. At the close of the people's case, Petitioner's attorney made a motion to dismiss. T1, Volume 5: 555. The court denied the motion. T1, Volume 5: 556. Petitioner's attorney did not call any witnesses. Ultimately, the jury found Petitioner guilty of counts 1, 2, 3, 4, 5, 6, and 9. T1, Volume 7: 790.

Petitioner's second trial began on October 16, 1996. This trial was for indictments 96-135A counts one through eighteen, which represented the remaining counts from indictment 96-028, as well as the counts from indictments 96-135 and 96-238 that were not already prosecuted. The prosecution put forth various witnesses including detectives and the nurses that examined the victims when they initially came to the hospital after being sexually assaulted. Additionally, FBI Special Agent Chris Allen testified that the pubic hairs found on Mrs. Bagley, the pubic hairs found on Mrs. Dassori, and the pubic hairs found in Mrs. Marcellus' bedroom belonged to Petitioner. T2, Volume 9: 1438, 1453, 1458. Petitioner's fingerprints were also found at the victims' homes. T2, Volume 5 & 3: 807, 540, 490. Petitioner's ex-girlfriend testified that Petitioner came into their apartment in February out of breath and carrying approximately $1500 in cash. T2, Volume 2: 313. Detective Gillespie testified that on December 5, 1995, Petitioner came to the station voluntarily, he was advised of his Miranda rights, waived those rights, and agreed to talk to the police. T2, Volume 3: 446, 447, 448, 451. At the end of the trial, the jury found Petitioner guilty of three counts of burglary in the first degree, attempted sodomy in the first degree, three counts of sexual abuse in the first degree, robbery in the third degree, grand larceny in the fourth degree, three counts of sodomy in the first degree, attempted rape in the first

degree, burglary in the second degree, two counts of petit larceny, and rape in the first degree.

T2, Volume 12: 157-160.

Defendant was sentenced for the convictions from both trials on December 5, 1996.

Judge Patsalos sentenced Petitioner under indictment 96-028, indictment 96-135, and indictment

96-238 to an aggregate of 63 ½ years to 127 years of imprisonment.  S: 60-71.

### D.    Post-Trial Proceedings

#### 1.    State Court Proceedings

Petitioner appealed his convictions, arguing: (1) that the trial judge erred in consolidating

the indictments; (2) that the trial judge should have declared a mistrial for alleged Rosario

violations; (3) that Petitioner was denied his 6th Amendment Confrontation Rights; (4) that the

trial court erred in denying Petitioner's motions to suppress; (5) that the court erred in not

allowing a lesser included charge to be considered by the jury; and (6) that Petitioner's sentence

should have been modified.  Resp't Ex. 19.  The Appellate Division affirmed Petitioner's

convictions, finding that: (1) the crimes were similar enough and, therefore, properly joinable; (2)

Petitioner failed to demonstrate any prejudice as a result of the court denying Petitioner's motion

to sever; (3) Petitioner's sentences were not excessive; and (4) the remainder of Petitioner's

claims were without merit.  Resp't Ex. 25.  Not finding any question of law presented which

ought to be reviewed, the New York Court of Appeals denied Petitioner's motion for leave to

appeal on March 27, 2002.  Resp't Ex. 26.  However, before the Court of Appeals issued their

decision, Petitioner filed a motion to reargue the Appellate Division's decision.  On March 18,

2002, the Appellate Division granted Petitioner's motion to reargue and vacated the prior

decision.  Upon reargument, the Appellate Division reaffirmed Petitioner's convictions, holding

that the trial court properly joined the charges, Petitioner's sentences were not excessive, and Petitioner's remaining claims were without merit. Resp't Ex. 30.

On April 11, 2002, Petitioner filed a § 440.10 motion (N.Y. Penal L. § 440.10) to vacate his judgments arguing that his conviction was obtained by the use of illegally obtained evidence and that his due process rights and right to counsel were violated. Resp't Ex. 31. The Appellate Division denied Petitioner's motion, stating that the claims could have been raised at trial or on appeal; thus, because Petitioner did not raise these claims previously and provided no reason for why he was unable to do so, the Appellate Division could not review the claims through a motion to vacate. Resp't Ex. 34. Petitioner's motion for leave to appeal was denied. Resp't Ex. 35. Petitioner filed a second § 440.10 motion to vacate his judgments, arguing that evidence used at trial had been obtained in violation of Petitioner's due process rights. Resp't Ex. 36. Additionally, Petitioner claimed that his right to effective assistance of counsel was violated when his attorney failed to object to the admission of the subject evidence. Id. The County Court denied Petitioner's second § 440.10 motion, finding that Petitioner offered no reason why these claims were not raised in Petitioner's first § 440.10 motion; that under the facts and circumstances of the case, Petitioner's allegations were clearly false; and that the issues were without merit. Resp't Ex. 38. The Appellate Division denied Petitioner's motion for leave to appeal. Resp't Ex. 39.

On August 12, 2004, Petitioner filed a Writ of Error Coram Nobis claiming that he was denied effective assistance of counsel in that his attorney failed to raise certain arguments and adequately brief the issues that he did raise. Resp't Ex. 40. The Second Department denied Petitioner's motion for failure to establish his claim of ineffectiveness. Resp't Ex. 42.

Petitioner's motion for leave to appeal was also denied.  Resp't Ex. 43.

### 2. *Federal Court Proceedings*

Petitioner timely filed the instant habeas petition on June 16, 2005, alleging that he was denied his right to due process and that he was denied effective assistance of counsel.  Pet. at 5-6. Respondent argues that the instant Petition should be denied in its entirety because Petitioner's due process claims are either procedurally barred or are meritless.  Resp't Mem. of Law at 22-39. Respondent further argues that Petitioner failed to establish that he was denied effective assistance of counsel.  Resp't Mem. of Law at 40-48.

## II. DISCUSSION

### A. Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. See Klein v. Harris, 667 F.2d 274, 282 (1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard v. Connor, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern

13

that falls within the mainstream of constitutional litigation.  See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court.  Klein, 667 F.2d at 282.  Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted.  Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)).  There is, however, another avenue available for exhaustion purposes.  A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction.  See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial.  Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court.  28 U.S.C. § 2244(d)(1).  This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  The limitations period may also be equitably tolled if a petitioner can show

that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**B.** **Petitioner's Due Process Claims**

    **1.** ***The Issue of Joinder of Indictments Does Not Rise to the Level of a Due Process Violation.***

    **a.** **Respondent's Procedural Bar Argument**

Petitioner contends that his Due Process rights were violated when the trial court consolidated various counts from the three indictments, creating two indictments. Pet. Mem. of Law at 34. Additionally, Petitioner contends that his Due Process rights were further violated by the trial court's refusal to sever various counts contained within the three indictments. <u>Id.</u> Petitioner argues that because the differing counts carried differing levels of proof, and because Petitioner might wish to testify as to some of the counts contained in the indictments, but not others, the trial court should have severed the counts. <u>Id.</u> Finally, because of the "superficial similarity" of the events in the indictment, Petitioner argues that the jurors may not have been able to distinguish between the counts such that a conviction for one count would lead to a conviction on all counts. <u>Id.</u>

Respondent makes the initial argument that Petitioner's petition is procedurally barred because he has not exhausted his state remedies with regard to the issue of joinder. Resp't Mem.

of Law at 22. While failure to exhaust all state remedies may result in a procedural bar to any petition, Respondent makes this claim based on a strange turn of events during Petitioner's appellate process. To summarize, Petitioner appealed the issue of joinder to the Appellate Division which affirmed Petitioner's conviction on October 29, 2001. Resp't Ex. 25. Petitioner then sought leave to appeal to the New York State Court of Appeals.

However, before the Court of Appeals could render a decision, Petitioner sought reargument in the Appellate Division and such reargument was granted. Resp't Ex. 27. After reargument, the Appellate Division again reaffirmed the convictions on March 18, 2002, stating in its decision that the original "decision and order of this court dated October 29, 2001, is recalled and vacated, and the following decision and order is substituted. . . ." Resp't Ex. 30. Petitioner never notified the Court of Appeals of the Appellate Division's grant to reargue the appeal and so, on March 27, 2002, the Court of Appeals denied Petitioner's leave to appeal the *original decision* from the Appellate Division. Resp't Ex. 26. Respondent argues that since this denial of leave was issued on the original decision that was subsequently vacated, Petitioner has not exhausted his appeals since no denial by the Court of Appeals was issued on the *final order* of March 18, 2002.

Respondent has not presented any case law directly on point that would support dismissal of the petition on this ground. An exhaustive search was made by this Court, and no case law was found that clearly held that such a circuitous appellate process indicates a failure to exhaust remedies by the Petitioner. Because this claim can be disposed of on alternate grounds, I respectfully recommend that this issue need not be decided in this case.

## b.    <u>State Law Issues in Habeas Petitions</u>

"Federal habeas relief 'does not lie for errors of state law.' " <u>McCall v. Artus</u>, No. 06 CV

3365 (SAS), 2008 WL 4501834 at *8 (S.D.N.Y. Sept. 29, 2008) (quoting <u>Estelle v. McGuire</u>,

502 U.S. 62, 67 (1991)).[6]  In other words, ". . .a federal habeas court is limited to deciding

whether a conviction violated the Constitution, laws or treaties of the United States." <u>Estelle v.</u>

<u>McGuire</u>, 502 U.S. 62, 67-68 (1991).  Therefore, for Petitioner to sustain his cause of action, he

must show that any error of state law – such as joining the indictments –  " 'render[ed]

petitioner's state trial fundamentally unfair' and thus violated his constitutional due process

rights." <u>Herring v. Meachum</u>, 11 F.3d 374, 377 (2d Cir.1993) (quoting <u>Tribbitt v. Wainwright</u>,

540 F.2d 840 (5th Cir. 1976).

Petitioner has not met his burden in proving that joinder of offenses rises to the level of a

constitutional violation. In fact, the Second Circuit has held that "joinder of offenses has long

been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair

trial." <u>Herring</u>, 11 F.3d at 377.  <u>See also</u> <u>United States ex rel. Evans v. Follette</u>, 364 F.2d 305 (2d

Cir. 1966) (decision to consolidate charges for trial does not itself raise an issue of constitutional

dimension).  However, Petitioner could show a violation of due process if the issue in question –

here, joinder of offenses – created "actual prejudice result[ing] from the events as they unfolded

during the joint trial." <u>Herring</u>, 11 F.3d at 378.

Again, Petitioner has not met his burden in proving actual prejudice.  Petitioner first

claims that actual prejudice resulted from joining the indictments because it rendered the jury

---

[6]In the spirit of Local Civil Rule 7.1(c), copies of the opinions with WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

unable to separate the proof for each individual count in the indictments. Pet. Mem. of Law at 34. Such an assertion is rebutted by the jury's acquittal of Petitioner of the one charge that was unsupported by fingerprint evidence. Pet. Mem. of Law at 29. This illustrates the jury's ability to segregate the evidence and render a verdict based solely on the evidence presented for each individual count. Additionally, the Appellate Division addressed this issue in its decision on Petitioner's appeal, stating that "[t]he evidence of each offense within the two groups, which was circumstantial and/or forensic in nature, was, inter alia, separately presented, uncomplicated and easily segregable in the jury's mind." People v. Page, 292 A.D.2d 547 (2nd Dept. 2002) (internal quotes omitted). This conclusion is amply supported by the record here, and there is no basis on which to conclude that actual prejudice resulted from joining the indictments.

Secondly, Petitioner alleges that actual prejudice resulted because he was unable to testify with respect to one count but not as to others included in the joined indictments. Pet. Mem. of Law at 34. Although other Circuit courts have held that "prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses. . ." (Cross v. United States, 335 F.2d 987, 989 (D.C. Cir. 1964)), the Second Circuit has held that more than a mere request to testify regarding separate counts is necessary in order to show prejudice. See United States v. Werner, 620 F.2d 922, 930 (2d Cir. 1980) ("It is settled that a mere unexplained assertion of [the desire to testify separately] is not enough"). In order to show prejudice, a defendant must " '. . . make[] a convincing showing that he [or she] has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.' " Werner, 620 F.2d at 930 (quoting Baker v. United States, 401 F.2d 958, 977 (D.C. Cir. 1968)). Such a "convincing showing" should include " 'enough information – regarding the nature of the

testimony he [or she] wishes to give on one count and his [or her] reasons for not wishing to testify on the other – to satisfy the court that the claim of prejudice is genuine. . . .' " Id. Petitioner here has presented no such evidence, merely advancing the notion that he "might wish" to testify as to one count but not as to another. Pet. Mem. of Law at 34. Such a claim does not rise to the level of a "convincing showing" of prejudice and, therefore, Petitioner's argument on this issue must be rejected.

**2.     *Petitioner's Fourth Amendment Claim is Both Procedurally Barred and is Not Reviewable Under the Stone v. Powell Doctrine.***

Petitioner's second asserted ground for habeas relief is that his Fourth Amendment rights were violated when Respondent used allegedly illegally obtained fingerprints in both his first and second trials. Petitioner's claim in this regard is both procedurally barred and must also be dismissed under the doctrine of Stone v. Powell.

Although a petitioner's claim in a habeas petition may have merit, the claim may be procedurally barred from review by a federal court if a state court has decided the issue on "adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 260 (1989). In other words, ". . . an adequate and independent finding of a procedural default [by a state court] will bar federal habeas review of the federal claim. . .." Harris, 489 U.S. at 262.

Petitioner's Fourth Amendment claim, as presented in his federal habeas corpus petition, revolves around assertions that his fingerprints were obtained during an illegal arrest occurring on November 5, 1995. Pet. Mem. of Law at 42-45. This argument was never raised on direct

appeal from Petitioner's original conviction[7] but was first presented in the Memorandum of Law in support of Petitioner's Motion to Vacate Judgment pursuant to CPL § 440.10 dated April 11, 2002. Resp't Ex. 31 at 6. In his decision summarily denying Petitioner's § 440.10 motion based on this argument, Judge Stewart Rosenwasser stated that Petitioner was procedurally barred from raising this new claim in a § 440.10 motion because such "allegations [] could have been raised at the trial level or in subsequent appeal." Resp't Ex. 34 at 2. As this is an adequate and independent state ground for the state court to procedurally bar Petitioner's Fourth Amendment claim, such an argument is not eligible for federal habeas review.

However, a Petitioner can overcome such a procedural default if he or she can show "cause for the procedural default and prejudice attributable thereto" (Id.) or "actual innocence" (Schlup v. Delo, 513 U.S. 298 (1995)). Petitioner in this case has provided no proof of either cause and prejudice or actual innocence and, therefore, his claim is procedurally barred from federal habeas review.

Even if Petitioner was able to overcome the procedural bar relating to his Fourth Amendment claim, such a claim is automatically barred under the Stone v. Powell doctrine. In Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976). See also Capellan v. Riley, 975 F.2d 67 (2d Cir. 1992). In this case, Petitioner was

---

[7]Petitioner did raise Fourth Amendment issues at trial and on appeal that involved the voluntariness of statements he gave to police and the introduction of evidence seized at his apartment but the claim of illegally obtained fingerprints was never raised at trial or on appeal.

afforded two separate suppression hearings before trial – one on May 30, 1996, and one on May 21-22, 1996 – to address certain Fourth Amendment issues that he was raising at that time. Although Petitioner did not raise the specific claim of illegally obtained fingerprints at either of these suppression hearings, the facts surrounding such a claim were presented and he certainly could have raised the issue at those suppression hearings[8].  Because the State provided Petitioner with "an opportunity for full and fair litigation" of his Fourth Amendment claim in these suppression hearings, Petitioner's argument for habeas relief based on such a claim must be denied.

Notwithstanding the previous analysis, Petitioner's claim is wholly without merit. Petitioner asserts that he would not have been identified and linked to the instant crimes but for the allegedly illegally obtained fingerprints.  However, the record shows that these particular fingerprints were never used to identify Petitioner.  In the first trial, witnesses compared Petitioner's fingerprints from his lawful December 5, 1995, arrest to those found at the scene; and in his second trial, fingerprints from an even older file were used for comparison.  Resp't Mem. of Law at 32.  In addition, Petitioner had several prior arrests which resulted in his fingerprints being on file in both state and federal databases.  Id.  Thus, no prejudice resulted from the fingerprints taken on November 5, 1995, and Petitioner's claim is without merit and must be denied.

3. ***Petitioner's Claim of Denial of Counsel During Interrogation is Procedurally Barred.***

Petitioner's third ground for habeas relief is identical to his claims in his first CPL §

_____

[8]Again, this was the basis for the denial of Petitioner's first § 440.10 motion on this issue.

440.10 motion.  See generally Pet. Mem. of Law at 46-49 and Resp't Ex. 31 at 13-16.  As such,

Petitioner's third claim must be dismissed on the same initial grounds as Petitioner's second

claim; that is, that Petitioner's claim is procedurally barred.

Again,  ". . . an adequate and independent finding of a procedural default [by a state

court] will bar federal habeas review of the federal claim...."  Harris, 489 U.S. at 262.  Just like

Petitioner's second claim regarding the allegedly illegally obtained fingerprints, Petitioner first

raised the instant claim regarding the denial of counsel during interrogation in his § 440.10

motion. The court in deciding Petitioner's § 440.10 claim stated that such an issue should have

been raised at the trial or appellate level and therefore was procedurally barred.  Resp't Ex. 34 at

2.  Because the state court ruled that the matter was procedurally barred and this serves as an

adequate and independent state ground for such a decision, this federal court cannot review such

an issue in a habeas petition and Petitioner's third claim must also be denied.

### 4.      *Petitioner's Claim of Ineffective Assistance of Trial and Appellate Counsel is Without Merit.*

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall

enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.

The right to counsel is "the right to effective assistance of counsel."  McMann v. Richardson, 397

U.S. 759, 771 n.14 (1970).  To prevail on a Sixth Amendment claim, a petitioner must prove that

(1) counsel's representation "fell below an objective standard of reasonableness" measured under

"prevailing professional norms," and (2) "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  Strickland v.

Washington, 466 U.S. 668, 688, 694 (1984); Hill v. Lockhart, 474 U.S. 52, 57-59 (1985).

Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel. See e.g. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992), cert. denied, 508 U.S. 912 (1993).

Habeas petitioners bear the burden of proving both prongs of the Strickland inquiry. A habeas petitioner must, therefore, prove that his or her attorney's actions were objectively unreasonable and that he or she was prejudiced by the deficient performance. Strickland, 466 U.S. at 689, 693. As the Supreme Court explained in Strickland, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

In reviewing allegations of ineffective assistance of appellate counsel, the Supreme Court has determined that indigent defendants do not have a "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present these points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Mayo, 13 F.3d at 533 ("In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.") The Supreme Court's decision in Jones was a reversal of the Second Circuit's holding that where an appellant requests that his or her attorney raise additional colorable points on appeal, "counsel must argue the additional points to the full extent of his [or her] professional ability." Barnes v. Jones, 665 F.2d

427, 433 (2d Cir. 1981). In reversing the Second Circuit, the Supreme Court pointed to "the superior ability of trained counsel in the 'examination into the record, research of the law, and marshalling [sic] of arguments on [the appellant's] behalf.' " Jones, 463 U.S. at 751 (quoting Douglas v. California, 372 U.S. 353, 358 (1963)). The Supreme Court highlighted certain literature about experienced appellate advocates; such writings articulate a preference for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most, on a few key issues." Jones, 463 U.S. at 751-52. For instance, the Court quoted a passage from Appellate Practice in the United States, Stern, R., which argues that "[t]he effect of adding weak arguments will be to dilute the force of the stronger ones." Id. at 752. The Supreme Court articulated a similar conclusion: "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . ." Id. at 753.

Additionally, a petitioner who has made an ineffective assistance of counsel claim in a state petition where a state court has ruled against Petitioner on the matter bears the burden of proving that the state court applied the Strickland test in an objectively unreasonable manner. See Yarborough v. Gentry, 540 U.S. 1 (2003); Bell v. Cone, 535 U.S. 685 (2002). To clarify, Petitioner made an ineffective assistance of counsel claim with regard to trial counsel in his second § 440.10 motion, dated May 5, 2003. This motion was denied by Judge Rossenwasser of the Orange County Court ostensibly on procedural grounds holding that "[a]ll of the issues raised in the instant motion could have been raised in the previous motion." Resp't Ex. 38 at 2. Such an analysis would leave this court unable to review this claim as it was dismissed on adequate and independent state grounds and thus procedurally barred. However, in his final determination of the matter, Judge Rossenwasser states that "the issues raised by the defendant are without

merit and defendant's motion is denied for this reason." Resp't Ex. 38 at 2. While dismissal of a petitioner's claims on both procedural grounds and on the merits allows a federal court to dismiss the claim as procedurally barred (Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)), this Court will choose to analyze the merits of Petitioner's claim nonetheless. As for Petitioner's claim of ineffective assistance of appellate counsel, such a claim was raised in Petitioner's Writ of Error Coram Nobis dated August 12, 2004, and was denied by the Appellate Division, Second Department on December 6, 2004. Resp't Exs. 40 and 42. In order to show that the state court did not apply the Strickland test in an objectively unreasonable manner, this court will address the reasonableness of each of Petitioner's ineffective assistance of counsel claims.

Here, Petitioner claims that he was denied effective assistance of both trial and appellate counsel. Regarding trial counsel's deficiencies, Petitioner claims that his trial attorney failed to raise two issues: (1) that he was denied counsel during interrogation and (2) that the police lacked probable cause for his initial arrest and fingerprinting relative to the charge of Criminal Possession of Stolen Property. Pet. at 15. To demonstrate ineffective assistance of counsel, Petitioner would have to demonstrate that counsel's failure to raise these particular claims was objectively unreasonable and that, but for trial counsel's performance, there likely would have been a different outcome.

As to Petitioner's first claim regarding the denial of counsel during interrogation, trial counsel's failure to raise this claim was not objectively unreasonable. Trial counsel was diligent in seeking to suppress evidence – particularly statements that Petitioner made to police – that resulted from the interrogation in question. Trial counsel argued that Petitioner's statements made during the November 5, 1996, interrogation and any evidence obtained from the

information gathered at that interrogation should be suppressed due to threats or force exerted by police during the interrogation.  Resp't Ex. 4 at 36.  Trial counsel was granted a hearing on this issue which resulted in the court deciding that such statements would be admissible.  Resp't Ex. 19 at 215; Resp't Ex. 20 at 260.

Petitioner now seeks to make the claim that trial counsel should have pursued suppression of evidence under the alternate theory that he was not provided with counsel during the interrogation, rather than that police exerted force and coerced his statements.  Pet. Mem. of Law at 53.  Again, in order for such a claim to rise to the level of ineffective assistance of counsel, the decision made by trial counsel must be objectively unreasonable.  Strickland, 466 U.S. at 688.  In order to do this, a petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id.  at 689, quoting Michel v. Louisiana, 350 U.S.91, 101 (1955).  Here, Petitioner has not met that burden.  Trial counsel pursued an objectively reasonable strategy to try to persuade the court to suppress Petitioner's statements and other evidence.  His inability to succeed on this front does not warrant a conclusion that his strategy was objectively unreasonable.  Therefore, Petitioner has not proved the initial prong of the Strickland test and this claim must be denied.

In his reply to Respondent's Memorandum of Law, Petitioner attempts to clarify the above claim by stating that his argument with respect to being denied counsel is not aimed at suppressing the statements he made during this interrogation but, instead, Petitioner makes the unsupported claim that, had counsel been provided to him, his fingerprints would not have been taken and he subsequently would not have been linked to the instant crimes.  Pet. Traverse at 11.  Petitioner goes on to state that "had counsel been provided to petitioner when requested,

petitioner would never have been arrested and. . .counsel would have had petitioner released and the fingerprint card destroyed. . ..." Pet. Traverse at 11. This contention is baseless and wholly without merit. Providing individuals with counsel during pre-arraignment proceedings is not for the purpose of helping those charged with a crime avoid arrest or the natural and probable processing that comes along with that; it is for the protection of a suspect's rights. Thus, the analysis of Petitioner's claim that he was denied counsel during interrogation would only center on the voluntariness of statements or evidence recovered because of those statements and would not address the hypothetical assertions that counsel could have prevented the subsequent arrest and the fingerprints derived from it. Petitioner's argument in this regard is illogical and unsupported, and must be denied.

Additionally, Petitioner asserts ineffective assistance of trial counsel based on the claim that counsel never argued that his initial arrest on the charge of Criminal Possession of Stolen Property was without probable cause. Pet. at 15. Petitioner argues that this alleged illegal arrest was solely for the purpose of obtaining his fingerprints in order to link him to the crimes of which he was eventually found guilty. Id. Even if Petitioner could sustain his burden that such a failure on trial counsel's part was objectively unreasonable and not merely trial strategy, he most surely cannot meet the burden of the second prong of the Strickland test; namely, that but for counsel's omission, the result of his trial would have been different. Strickland, 466 U.S. at 694. Here, Petitioner's argument fails because the fingerprints in question, those taken after the alleged illegal arrest on November 5, 1995, were never used at either trial. Resp't Mem. of Law at 42. Petitioner's fingerprints were taken again after his arrest on December 5, 1995, and those were the fingerprints that were used by experts to compare to the fingerprints left at the various

crime scenes.  Id.  Additionally, Petitioner had several prior arrests and his fingerprints were

readily available from the applicable state and federal databases.  Resp't Mem. of Law at 43.

Thus, Petitioner's argument that the alleged illegal arrest of November 5, 1995, led to the

processing of his fingerprints that, if never taken, would never have led to his identification in the

instant crimes is simply meritless.  For this reason, Petitioner's second claim with regard to

ineffective assistance of trial counsel must be denied.

Petitioner, in his Traverse, makes the argument that "it is irrelevant what the police 'could

have' done [referring to using fingerprints from Petitioner's earlier arrests] because the actions

which they **did do** violated petitioner's constitutional rights. . ."(emphasis in original).  Pet.

Traverse at 9.  In other words, Petitioner admits that his prints were available to the police from

earlier arrests yet Petitioner seeks to discipline the police for what he deems a violation of his

constitutional rights.  Even if Petitioner could sustain his burden, *arguendo*, that his fingerprints

were obtained illegally on November 5, 1995, a point not conceded by this Court, Petitioner still

would be required to prove that such a violation was the only link to his identification.  In

support of his claim, Petitioner cites Wong Sun v. United States, 371 U.S. 471 (1963), which laid

out the doctrine of the "fruit of the poisonous tree."  In essence, Wong Sun held that if a Fourth

Amendment constitutional violation occurred in the early stages of obtaining evidence, then all

evidence obtained due solely to that unconstitutionally obtained evidence is considered tainted,

inadmissible, and referred to as the "fruit of the poisonous tree."  Wong Sun, 371 U.S. at 487-

488.  However, Petitioner fails to mention that police can rebut such an accusation by showing

that the evidence later admitted was found through an "independent source."  Wong Sun, 371

U.S. at 487.  Specifically, "[i]f knowledge of [the facts] is gained from an independent source

they may be proved like any others. . . ."  Silverthorne Lumber Co. V. United States, 251 U.S.

385, 392 (1920).  Petitioner's fingerprints were easily available from prior arrests and, hence,

were obtainable from an independent source rendering Petitioner's "fruit of the poisonous tree"

argument void.

Next, Petitioner argues that he was denied effective assistance of appellate counsel.  To

reiterate, the Strickland test has been found to apply to both trial and appellate counsel.  See

Mayo, 13 F.3d at 533; Claudio, 982 F.2d at 803.  Thus, in order to prove ineffective assistance of

appellate counsel, Petitioner must again show that counsel's actions were objectively

unreasonable and that there was resulting prejudice due to counsel's errors.  Strickland, 466 U.S.

at 688, 694.  However, appellate counsel is not required to press all nonfrivolous claims but may

use his or her professional judgment in winnowing out weaker arguments and focusing only on

those that counsel believes will be effective.  Jones, 463 U.S. at 751-2.

Petitioner seems, in his Memorandum of Law in Support of the Writ for Habeas Corpus,

to take issue with several alleged omissions by appellate counsel.  See Pet. Mem. of Law at 56-

61.  First, Petitioner claims that appellate counsel was deficient in the way she raised the point of

joinder in Petitioner's appellate brief.  Pet. Mem. of Law at 57-8.  More specifically, Petitioner

claims that appellate counsel "failed to advise the reviewing court of the full magnitude of this

error [of joinder] by failing to brief the constitutional dimension thereof."  Pet. Mem. of Law at

57.  As was fully detailed in Section B(1)(b) *supra*, the issue of joinder does not rise to the level

of a constitutional violation. Thus, Petitioner's claim in this regard fails to establish that it was

objectively unreasonable for his appellate counsel to fail to raise this point.

Second, Petitioner claims that appellate counsel was ineffective because she did not brief

the constitutional issues that Petitioner raises in Sections B(2) and B(3) *supra*: namely, that Petitioner's fingerprints were allegedly illegally obtained and that Petitioner was denied counsel during his interrogation on November 5, 1995. Pet. Mem. of Law at 58. As was fully detailed in the analysis *supra*, Respondent never used the fingerprints taken from Petitioner on November 5, 1995, therefore, there was no resulting prejudice. Hence, it would not have been effective for appellate counsel to brief this issue. Additionally, appellate counsel did fully brief the issue of the voluntariness of statements that Petitioner made during the interrogation, apparently without counsel present. Resp't Ex. 19 at 213-215. The argument put forward was clear, understandable and supported by citations to precedent cases that appellate counsel relied on for points of law. Nothing in the brief suggests that the argument put forward was objectively unreasonable and Petitioner makes no other assertions as to what else appellate counsel could have done with regard to this point. Therefore, Petitioner's claim that counsel was ineffective in briefing this matter is without merit.

Third, Petitioner claims that counsel was deficient in pressing a constitutional point regarding his Confrontation Clause rights because counsel's argument was "one and half pages long with only twelve sentences." Pet. Mem. of Law at 59. Again, in reviewing appellate counsel's brief on this point, her argument was clear, the issue was presented in an understandable fashion and she marshaled numerous legal precedents to support her point. Petitioner has supplied no evidence that appellate counsel's handling of this matter on appeal was objectively unreasonable. To attack appellate counsel's abilities simply by referring to the length of the argument presented is unpersuasive and Petitioner's claim in this regard must be denied.

Fourth, Petitioner argues that appellate counsel was deficient because she did not brief the

constitutional violations that Petitioner subsequently brought to the state court's attention in his Writ of Error of Coram Nobis. Pet. Mem. of Law at 59. These alleged constitutional violations were: (1) that Petitioner's fingerprints were allegedly illegally obtained on November 5, 1995; (2) that Petitioner was denied his right to counsel during interrogation; and (3) that Petitioner was denied the effective assistance of trial counsel. Since each of these issues have been fully discussed and analyzed already in this Report and Recommendation, the court will refrain from reiterating the specific reasons why each does not rise to the level of ineffective assistance of appellate counsel. For all of these reasons, Petitioner's final claim with regard to appellate counsel should be denied.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed. As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962)

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file

written objections to this Report and Recommendation. Such objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable

Kenneth M. Karas, at the United States District Court, Southern District of New York, United

States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of

the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: ~~December~~, ~~2009~~ January 6, 2010
White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
Chief United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Kenneth M. Karas, U.S.D.J.
300 Quarropas Street
White Plains, New York 10601

William Page, #96-A-7843 (UH11-12)
Clinton Correctional Facility
P.O. Box 2000
Dannemora, New York 12929

Andrew R. Kass
District Attorney of Orange County
County Government Center
255 Main Street
Goshen , NY 10924